UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KEITH ALVAREZ,

                                        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

                                        Defendant.

Case No.:  3:17-cv-2236-AJB-NLS

**REPORT AND
RECOMMENDATION FOR ORDER**

**(1) DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT [ECF No. 26]; and**

**(2) GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT [ECF No. 27]**

Plaintiff, Keith Alvarez, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration's ("Defendant") final decision denying his claim for Supplemental Social Security Income benefits.  ECF No. 12.  This case was referred for a report and recommendation on the parties' cross motions for summary judgment.  ECF No. 5; *see* 28 U.S.C. § 636(b)(1)(B).

///

///

///

///

1

## I.    INTRODUCTION

Plaintiff initially filed an application for supplemental security income on March 26, 2007.   Since that time, Plaintiff has sought, and been granted, review and remand by either the Appeals Council or the court on three occasions.  *See* ECF No. 26-1 at 1-3. Plaintiff now seeks review of an unfavorable decision of the ALJ after remand from the court in the Central District of California.  *Id.* at 3.

Plaintiff was born on September 28, 1971 and seeks benefits for a disability onset date of March 28, 1992 (age 20) through to the present.  AR 728; 768-69.

## II.    BACKGROUND

### A. Procedural History

Plaintiff initially applied for supplemental security income on March 26, 2007, alleging disability commencing March 27, 2007. AR 158-61. The Commissioner denied Plaintiff's claims on August 16, 2007. AR 158-61. Subsequently, on September 11, 2007, Plaintiff requested reconsideration of the initial determination. AR 162. On October 23, 2007, the Commissioner denied reconsideration. AR 163-67. On November 13, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 168. The Commissioner appointed ALJ Patti L. Hunter to preside over the hearing. AR 170-11. ALJ Hunter heard the matter in an oral hearing on September 16, 2008. AR 90-115. On November 5, 2008, ALJ Hunter published an unfavorable decision. AR 118-27. On December 9, 208, Plaintiff subsequently requested review of ALJ Hunter's decision by the Appeals Council. AR 199. On February 13, 2009, the Appeals Council granted the request for review for substantial evidence and error of law provisions of the Social Security Administration regulations. AR 129-32. Again, the Commissioner appointed ALJ Hunter to preside over the matter. AR 210-13. On June 7, 2011, ALJ Hunter conducted a remanded hearing, AR 63-89, and, on July 15, 2011, published another unfavorable decision, AR 133-46.

Plaintiff requested again, on August 8, 2011, that the Appeals Council review the decision by ALJ Hunter. AR 244. The Appeals Council subsequently remanded the case

back to the ALJ, for the second time, on September 18, 2012. AR 248. This time the Commissioner appointed ALJ Dale A. Garwal to preside over the matter. AR 249-54. ALJ Garwal conducted the third hearing on January 14, 2013, AR 44-62, and published an unfavorable decision on March 22, 2013, AR 10-23. On April 12, 2013, Plaintiff requested that the Appeals council review the decision published by ALJ Garwal. AR 7-9. On February 12, 2014, the Appeals Council denied the request for review of ALJ Garwal's decision. AR 1-6.

On April 4, 2014, Plaintiff filed a complaint for review of the final decision of the Commissioner of Social Security. AR 803-05. On July 28, 2015, United States Magistrate Judge Alka Sagar reversed the decision of the Commissioner and remanded for further proceedings. AR 831. The Commissioner then appointed ALJ Jay E. Levine to preside over the remanded matter. AR 933-53. ALJ Levine conducted a fourth oral hearing on May 1, 2017. AR 756-75. On July 26, 2017, ALJ Levine published an unfavorable decision. AR 725-55. 61 days after ALJ Levine's decision was published, it became the final decision of the Commissioner. This action followed. Plaintiff asks the Court to review the final decisions of the Commissioner for substantial evidence and error of law pursuant to 42 U.S.C. §§ 405(g); 1383(c).

## B. Plaintiff's Background

Plaintiff initially applied for supplemental security income under Title XVI of the Social Security Act. AR 274-88, 291-93, 303. Plaintiff alleges disability as of March 27, 1992 due to mental illness and a history of knee and shoulder injuries.[1] AR 274-88, 291-93, 303. Plaintiff claims he last worked in the early 1990's and then stopped after a work-related injury and four knee surgeries. AR 96. Plaintiff was incarcerated "off and on" from 1995 through 1999, until he was convicted of forgery and incarcerated consistently

---

[1] Although Plaintiff cannot be established as disabled before the filing date, pursuant to section 1614(a)(3)(A) of the Social Security Act, the ALJ can consider the complete relevant medical history. 20C.F.R. § 416.912(d).

from 1999 until he was released in March 2007. AR 96. While incarcerated, he spent all day watching television and playing PlayStation, and continued to do so after his release in March 2007. AR 99, 102. Plaintiff has previously testified that he has not looked for work since his release because he "will not function with any kind of authority" AR 98. At his 2013 hearing, Plaintiff testified to being in constant knee pain, at times severe, and treated by pain management medications. AR 50-51. Plaintiff testified that his knee pain prevented him from being able to walk on uneven ground. AR 54. Plaintiff sustained an injury to his triceps and has testified that he has difficulty standing and walking, and with lifting his right arm. AR 78-79. He claimed he could lift twenty pounds on occasion, but not for most of a work day, and he would have to sit down if on his feet for more than 15 minutes. AR 55.

At the most recent Administrative hearing in May 2017, Plaintiff emphasized that he was unable to work due to his mental condition, rather than any physical condition. AR 768. He testified that he goes to the gym daily and did not indicate he experienced any pain, and that his routine involved extremely high repetitions of lighter weights. AR 768. Plaintiff testified that he has problems "with society" and "with people." AR 769. Plaintiff testified that he had trouble with normal activities, such as standing in line at the grocery store or driving in traffic.[2] AR 769.

III.   **THE ALJ DECISION**

A. The Sequential Process

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she cannot engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least twelve months.  42 U.S.C. §§ 423(d), 1382c(a)(3).  The Social Security

---

[2] Specifically, Plaintiff testified that he could not wait in line at the grocery store without "wanting to attack the person in line behind him" and he did not drive in traffic because he would "flip out." AR 769.

regulations establish a five-step sequential evaluation to determine whether an applicant is disabled under this standard. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

At step one, the ALJ determines whether the applicant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b). If not, then at step two, the ALJ must determine whether the applicant suffers from a severe impairment or a combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(c). If the impairment is severe, at step three the ALJ must determine whether the applicant's impairment or combination of impairments meets or equals an impairment contained under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(a)(4)(iii), 416.920(d). If the applicant's impairment meets or equals a listing, he or she must be found disabled. *Id.*

If the impairment does not meet or equal a listing, the ALJ must determine the applicant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e). Then, the ALJ must determine at step four whether the applicant retains the residual functional capacity to perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(f). If the applicant cannot perform past relevant work, at step five the ALJ must consider whether the applicant can perform any other work that exists in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(g).

The applicant carries the burden to prove eligibility from steps one through four but the burden at step five is on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### B. Substance of the ALJ Decision

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 26, 2007, the application date. AR 730.

At step two, the ALJ determined Plaintiff had the following severe impairments: "a history of right shoulder impingement, a history of tendonitis of the right shoulder, a history of dislocation of the left shoulder healed, a history of torn triceps muscle healed, a history of depression, a history of substance abuse, personality disorder, and general

anxiety disorder.  AR 730.  The ALJ noted additional physical impairments were alleged, but assessed them as non-severe with no more than a minimal limitation on Plaintiff's ability to perform basic work activities.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a disabling impairment as set forth in the regulations.  AR 731.  The ALJ found that Plaintiff did not demonstrate the severity of symptoms required either singly or in combination, nor did any physician record "credible findings equivalent in severity" to meet any of the criteria for either physical or mental disabling impairments.  *Id.*  The ALJ specifically reviewed the paragraph B criteria for mental impairments and found that Plaintiff had only mild limitations in understanding, remembering, or applying information and adapting and managing himself, and had at most moderate limitations in interacting with others and concentration, persistence, and pace.  In the absence of two "marked" limitations or one "extreme" limitation, the paragraph B criteria were not satisfied.  AR 731-32.

At step four, the ALJ found Plaintiff had the residual functional capacity to "perform less than the full range of medium work…."  AR 733.  The ALJ added some limitations to that work:  "Specifically, the cla[i]mant can lift and/or carry twenty-five pounds frequently, fifty pounds occasionally; he can stand and/or walk for six out of an eight-hour workday; he can sit for six hours out of an eight-hour workday; he is limited to routine, non-complex tasks; and he is to work in a nonpublic setting with no sustained intense interaction with coworkers and supervisors (incidental or brief social conversation is not precluded)."  AR 733.  In reaching this conclusion, the ALJ considered both the objective and opinion evidence, reciting both in detail.  AR 733-44.  The ALJ "adopted a residual functional capacity that is best supported by the objective evidence as a whole" without accepting any opinion evidence as conclusive.  AR 741.  The ALJ considered and assigned weight to each opinion provided, and provided reasoning for the weight assigned.  AR 741-44.  Considering all the evidence, the ALJ concluded the Plaintiff is not disabled and could perform medium work with some limitations.  AR 745.

At step five, the ALJ found based on the testimony of a vocational expert, that there are jobs in the national economy that Plaintiff can perform, including industrial cleaner or packer.  AR 745-46.

The ALJ concluded Plaintiff has not been under a disability since the date of his application, March 26, 2007.

## IV.   DISCUSSION

In challenging the ALJ's decision, Plaintiff argues the ALJ committed reversible error by (1) impermissibly discounting the opinion of Dr. Kivowitz, a medical expert (ECF No. 26-1 at 8-13), and (2) failing to provide specific and legitimate reasons to discount the opinion of Dr. Bartell, a treating physician (ECF No. 26-1 at 14-20).

### A. Legal Standard of Review

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards.  *Batson*, 359 F.3d at 1193.  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotation and citation omitted).  It is a "highly deferential" standard of review.  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008).  If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld.  *Molina*, 674 F.3d at 1111.  It is not the court's job to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff.  *Batson*, 359 F.3d at 1193.

As a general rule, more weight should be given to the opinion of a treating doctor than to the opinion of a source who does not treat the claimant.  *Lester*, 81 F.3d at 830-31; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  The rationale behind giving a

7

treating source's opinion greater weight is that "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Winans*, 853 F.2d at 647. However, an ALJ may disregard a treating source's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Where a treating doctor's opinion is not contradicted by another doctor, a commissioner can only reject the treating doctor's opinion for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If the treating source's opinion is contradicted by another source, the general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations. *Winans*, 853 F.2d at 647. When there is a conflict between the opinions of a treating source and an examining source, the Ninth Circuit requires that, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *see also Lester*, 81 F.3d at 830-31.

When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan*, 242 F.3d at 1149; *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings."); *Molina*, 674 F.3d at 1111-12 (noting an "ALJ may 'permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions'" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996))). The more consistent a medical opinion is with the record as a whole, the more weight it is given. *See* 20 C.F.R. § 404.1527(d)(4). A treating source's opinion on the nature and severity of an impairment is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. § 404.1527(d)(62). The opinion of a

consultative examiner that rests on the examiner's own independent examination and clinical findings can alone constitute substantial evidence for rejecting a conflicting opinion from a treating source. *See Tonapetyan*, 242 F.3d at 1149. It is then solely the province of the ALJ to resolve the conflict. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**B. The ALJ Properly Considered the Opinions of Dr. Kivowitz and Articulated Legally Sufficient Reasons to Discount the Opinion, and the ALJ's Conclusion is Supported by Substantial Evidence**

Dr. Kivowitz testified at the hearing that, with some caveats, in his opinion Plaintiff met the disability listings for sections 12.04, 12.06, and 12.08 as of May 4, 2007. AR 765-66. The caveats to his opinion were based on unknown substance abuse, and lack of records after 2011. AR 766. Accordingly, Dr. Kivowitz expressed no opinion for dates after March 21, 2011 for which there were no records. *Id.* In providing this testimony, Dr. Kivowitz cited to GAF scores ranging from 49 to 65, and while he noted there was evidence of malingering, said he "didn't consider it seriously." AR 766-67.

Plaintiff argues that the ALJ impermissibly discounted the opinion of Dr. Kivowitz, a medical expert. Plaintiff argues that Dr. Kivowitz's opinion that Plaintiff met three medical listings should stand and that the ALJ's determination that Plaintiff did not meet or equal a listing is reversible error.

Importantly, and improperly characterized by the Plaintiff at several points in his moving papers, the ALJ did not "reject" Dr. Kivowitz's opinion, he assigned it "little weight" in his calculus of residual functional capacity. Another distinction that the Plaintiff fails to acknowledge is the ALJ was tasked with determining whether Plaintiff met or equaled a listing for the entire period for which Plaintiff is claiming disability, March 27, 1992 through to the day of the decision, July 31, 2017. Dr. Kivowitz's opinion covers only a fraction of that time period, 2007-2011, and thus by its own limitations should not have controlling weight when the ALJ is tasked with determining disability for entirety of the time claimed.

The ALJ acknowledged Dr. Kivowitz's opinion, and properly provided specific, legitimate reasons for discounting—not rejecting—the opinion. *Lester,* 81 F.3d at 830-31; *accord Valentine,* 574 F.3d at 692. Reviewing the decision, the ALJ provided no less than four specific and legitimate reasons to discount the opinion of Dr. Kivowitz: (1) Dr. Kivowitz did not take the evidence of malingering seriously; (2) the opinion was based on GAF scores; (3) the opinion was inconsistent with objective findings showing Plaintiff oriented and with normal mental status evaluations and stable on medication; and (4) the opinion was inconsistent with Plaintiff's admitted activities of daily living. AR 745. The ALJ's opinion expounded on these reasons and supported them with substantial evidence as follows.

### 1. Malingering

As to malingering, the ALJ found there was a "high probability" based on Dr. Paladino's in-person exam. AR 744. Dr. Paladino found the Plaintiff "particularly deceptive" with a "highly evolved criminal mind that made itself quite manifest during [the] interview." AR 455. Dr. Paladino found Plaintiff's intelligence "average to somewhat above," and that the Plaintiff was manipulative to achieve his desired ends, for instance, only cooperating when it was part of his agenda. AR 454-55. The ALJ found these observations consistent with the record as a whole. AR 744. The ALJ also noted average intelligence was consistent with someone who made a living forging documents and able to complete some college courses. AR 744.

Plaintiff argues that the ALJ improperly considered malingering as a reason to discount the opinion of Dr. Kivowitz, and in doing so "arbitrarily substituted his own judgment." ECF No. 26-1 at 10. Plaintiff asserts the ALJ's consideration is improper because Dr. Kivowitz found there was only one notation of malingering in the treatment notes. *Id.* Plaintiff does not argue that the ALJ discounted the Plaintiff's testimony, only that it was improper for the ALJ to contradict Dr. Kivowitz's finding.

"[A] finding of suggested malingering is proper for consideration, the ALJ "must consider the entire case record" in determining the claimant's credibility. *Longmore v.*

*Astrue*, 783 F. Supp. 2d 1130, 1134 (D. Or. 2011) (citing *Schow v. Astrue,* 272 Fed.Appx. 647, 652–53 (9th Cir.2008); SSR 96–7p.). In the Ninth Circuit, a specific finding of malingering is not required, rather, it is sufficient that there be affirmative evidence suggesting malingering. *Bahram H. v. Comm'r of Soc. Sec*., No. 3:18-cv-05152-BAT, 2018 U.S. Dist. LEXIS 216589, at *7-8 (W.D. Wash. Dec. 27, 2018) (citing *Carmickle*, 533 F.3d at 1160 n.1.)[3]

Here, the Court finds there is "more than a scintilla" of evidence of malingering, and the ALJ was within his authority to consider the possibility of malingering in the context of the whole record and as a reason to discount Dr. Kivowitz's opinion. In addition to Dr. Paladino's express finding, the ALJ's conclusion that there is a "high probability" of malingering is supported by the treatment notes of Dr. Ratner noting that Plaintiff simply refused to participate in a meaningful or cooperative way if it did not suit him. AR 565. This lack of cooperation leaves the physicians unable to accurately assess Plaintiff, including making it impossible to gather an accurate GAF score. *Id.* ("the scores do not reflect Mr. Alvarez' true intelligence"). Moreover, the more recent treatment notes from Dr. Zink indicate that Plaintiff failed to follow her dosing instructions. AR 1091 ("Will not Rx[prescribe] him anymore testosterone since he continues to use too much and needs to be monitored by endo."). It is the ALJ's role to make credibility determinations and considering the entire case record, the ALJ was well within his authority to consider evidence of malingering as one of several reasons to discount Dr. Kivowitz's opinion.

### 2. *GAF Scores*

The ALJ also discounted Dr. Kivowitz's opinion because it relied heavily on low GAF scores. The ALJ went into detail as to why he gave little weight to the GAF scores,

---

[3] Evidence suggesting malingering is most often relevant when the ALJ seeks to reject the claimant's testimony. Here, the ALJ is not rejecting Plaintiff's testimony, rather he is considering the weight to assign to a medical expert's testimony.

including a comparison of GAF scores to the mental status exams. AR 742-743. The ALJ noted that GAF scores are highly subjective and one of many tools used in assessing individuals. *Id.* at 742. And while Plaintiff's GAF scores ranged from low to normal, all the mental status exams put Plaintiff squarely within normal limits. *Id.* The ALJ also noted that even the exams that produced the lowest GAF scores also found the Plaintiff to be pleasant and cooperative, with logical thinking, alert and oriented, with average intelligence. AR 743.

Plaintiff takes particular issue with this reason to discount Dr. Kivowitz's opinion, arguing the ALJ cherry-picked citations. This argument does not withstand scrutiny; Plaintiff's argument conflates the effects of anxiety and depression with the ability to understand. Plaintiff's argument that his desire to only watch TV in 2007, or that he had a "constant stream of disparaging remarks" during a 2010 appointment, does not alter the evidence showing that Plaintiff was, and is, intellectually able to function and interact with the world around him, despite some low GAF scores. As the ALJ noted, Plaintiff was able to make a decent amount of money forging documents. He can maintain a relationship with his family and his girlfriend. He understood and responded appropriately to the questions of every ALJ during every hearing he attended, and every doctor that has examined him – sometimes, it seems, with some attitude, but never without understanding, which is inconsistent with GAF scores below 50. Even Dr. Bartell, whose opinion Plaintiff relies on most heavily, inconsistently gave Plaintiff a GAF score of 49 while in the same notes assessing him to have average intelligence. AR 547-548.

Juxtaposing the GAF scores with treatment notes, the ALJ found a conflict. Accordingly, the ALJ resolved the conflict by giving less weight to the GAF scores and greater weight to the "objective details of the entire record" such as the mental status exam notes and numerous recorded observations of the Plaintiff performing within normal limits. AR 743. The ALJ is responsible for resolving conflicts in the record and that resolution must be upheld where, as here, it is supported by substantial evidence.

### 3. *Objective findings showing Plaintiff oriented and with normal mental status evaluations and stable on medication*

The third reason provided by the ALJ to discount Dr. Kivowitz's opinion was that the ALJ found Dr. Kivowitz's opinion that Plaintiff was disabled conflicted with the "objective findings showing Plaintiff oriented and with normal mental status evaluations and stable on medication."

The record is replete with substantial evidence that Plaintiff's mental status was assessed as normal and appropriate, and to the extent the findings were abnormally low, usually the treatment notes include explanations and notes that reveal the physicians' assessments were different from the "score" Plaintiff produced.  Plaintiff's argument that the ALJ cherry picked citations is not supported by the record as a whole, as the inconsistencies between the scores, mental status exams, and treatment notes are prevalent throughout the Plaintiff's records, including the 2007-2011 time period to which Dr. Kivowitz's opinion is limited, and up until the most recent visits:

- **L. Ratner**, on March 23, 2010 (AR 563-567):
    - "Orientation: x3" (AR 564).
    - "Thinking: Logical and goal directed …" (AR 564).
    - "Insight and Judgment:  Adequate capacities for common sense reasoning, abstraction, and vocabulary …" (AR 564).
    - "Behavior: Compliant." (AR 564).
    - "Affect: Appropriate to thinking." (AR 564)
    - "WAIS-IV: Results indicate borderline intellectual functioning."  (AR 564).  However, "he did not participate in the process in a cooperative way and omitted or brushed off whatever he felt he did not want to participate i[n]…. the scores do not reflect [Plaintiff's] true intelligence…." (AR 565).
- **G. Paladino**, on June 2, 2007 (AR 450-456):
    - "He was alert and oriented x4." (AR 453).

- o "He appeared to be comfortable during the interview process." (AR 453)
- o "His mood was serious but cooperative… His affect was broad and appropriate to his mood. Speech was spontaneous, fluent, and well modulated." (AR 454).
- o "[T]hought processes were goal directed and reality based." (AR 454).
- o "General intelligence appears to be average to somewhat above." (AR 454).
- **G. Bartell**, on May 11, 2007, May 15, 2007, May 29, 2007, June 8, 2007, July 6, 2007, February 8, 2008, and April 4, 2008 (AR 679-96):
  - o "He is alert, pleasant, and organized." (passim)[4]
  - o "He is alert, cooperative, and makes good eye contact." (AR 683 (May 29, 2007)).
  - o "He is alert, pleasant and cooperative." (AR 685 (May 11, 2007)
  - o "His thinking is logical, goal directed, and not speeded. … He is alert and well oriented. … **I estimate his intelligence to be average**." (AR 694 (June 8, 2007)).
  - o "He continues to take Lexapro 10mg on a regular basis." (passim)
    - "…and is noting less anxiety." (AR 683 (May 29, 2007)).
    - "…He overall is less depressed and anxious." (AR 682 (June 8, 2007)).
    - "…He remains less depressed and anxious." (AR 681 (July 6, 2007)).
    - "…feeling less depressed and anxious." (AR 695 (June 8, 2007)

---

[4] (AR 680 (Feb. 8, 2008); (AR 682 (June 8, 2007)); (AR 684 (May 15, 2007)); (AR 386 (April 4, 2008)).

- **I. Zink**, on September 10, 2014, November 6, 2014, January 27, 2015, February 19, 2015, April 17, 2015, June 18, 2015, August 25, 2015, October 6, 2015, November 20, 2015, December 8, 2015, March 11, 2016, May 13, 2016, July 13, 2016, August 5, 2016, September 8, 2016, October 27, 2016, December 23, 2016, January 27, 2017 (AR 1053-1167, 1171-84):

  o "Oriented to time, place, person and situation. Appropriate mood and affect." (*passim*)[5]

  o "The patient is oriented to time, place, person, and situation." (AR 1183 (Aug. 26, 2014)).

  o "Functional improvement achieved with present dosing of meds…" (*passim*)[6]

  o "Patient recently brought in his GRE form for me to complete. **I do not feel he is disabled physically <u>or mentally anymore</u> and can do work**. This form was mailed in for him. I conclude he is able to work because he has been very stable on his meds and goes to the gym and works out daily." (AR 1078 (emphasis added) (Aug. 5, 2016)).

  o In the "Review of Systems" portion of the report, Doctor Zink listed "anxiety and depression" in the "negative" column, as opposed to the "positive" column. (passim)[7]

---

[5] (AR 1178 (Sept 10, 2014)); (AR 1170 (Oct. 8, 2014)); (AR 1166 (Nov. 6, 2014)); (AR 1160 (Jan. 27, 2015)); (AR 1154 (Feb 19, 2015)); (AR 1148 (Apr. 17, 2015)); (AR 1142 (June 18, 2015)); (AR 1132 (Aug. 25, 2015)); (AR 1126 (Oct. 6, 2015)); (AR 1121 (Nov. 20, 2015)); (AR 1096 (Mar. 11, 2016)); (AR 1090 (May 13, 2016)); (AR 1083 (July 13, 2016)); (AR 1077 (Aug. 5, 2016)); (AR 1072 (Sept. 8, 2016)); (AR 1067, Oct. 27, 2016)); (AR 1061 (Dec. 23, 2016)); (AR 1056 (Jan. 27, 2017)).

[6] (AR 1155 (Feb 19, 2015)); (AR 1149 (Apr. 17, 2015)); (AR 1133 (Aug. 25, 2015)); (AR 1127 (Oct. 6, 2015)); (AR 1096 (Mar. 11, 2016)); (AR 1091 (May 13, 2016)); (AR 1084 (July 13, 2016)); (AR 1061 (Dec. 23, 2016)); (AR 1056 (Jan. 27, 2017)).

[7] (AR 1177 (Sept. 10, 2014); (AR 1165 (Nov. 6, 2014)); (AR 1159 (Jan. 27, 2015)); (AR 1153 (Feb 19, 2015)); (AR 1131 (Aug. 25, 2015)); (AR 1120 (Nov. 20, 2015)); (AR 1113 (Dec. 8, 2015)); (AR 1095

These notations are inconsistent with Dr. Kivowitz's conclusion that Plaintiff was completely disabled due to his mental status from 2007-2011; and are inconsistent with Plaintiff's claims that he continues to be disabled based solely on mental issues. The ALJ properly found and resolved this conflict, and his resolution is supported by substantial evidence.

### 4. Activities of Daily Living

The fourth reason provided by the ALJ was the Plaintiff's own testimony and admissions regarding his activities of daily living. In sum, the Plaintiff described his own daily activities as someone with no physical or mental limitations. He lives with his girlfriend part of the time, goes to the gym daily. AR 767-768. He enjoys watching movies and playing video games. AR 770. The record reflects additional activities of daily living as noted by the ALJ, including computer proficiency, handling of his finances, maintenance of his vehicle, and self-care[8] such as cooking, laundry, and cleaning. AR 731. Plaintiff was able to take and pass college courses and was seeking employment. *Id.* Plaintiff can undertake all necessary activities of daily living, and while he appears to dislike those activities that require social interaction, such as going to the grocery store, he is perfectly capable of completing them unaided. AR 769.

Plaintiff argues that his ability to complete activities of daily living "doesn't mean he will not fly off the hinge when surrounded by people." This argument rings hollow, as Plaintiff's activities of daily living over the last decade show that he is capable of functioning in various aspects, such as at the gym regularly, navigating numerous doctor's appointments and legal hearings, all of which call for about the same level of interaction as the ALJ's recommended RFC. AR 733 ("less than a full range of medium work…routine, noncomplex tasks…nonpublic setting with no sustained intense

_____

(Mar. 11, 2016)); (AR 1089 (May 13, 2016)); (AR 1082 (July 13, 2016)); (AR 1077 (Aug. 5, 2016)); (AR 1071 (Sept. 8, 2016)); (AR 1066, Oct. 27, 2016)); (AR 1060 (Dec. 23, 2016)).
[8] *See also,* AR

3:17-cv-2236-AJB-NLS

interaction with coworkers and supervisors…").  In addition, Plaintiff was capable of navigating a prison setting- surrounded by people constantly for seven years- without issue, and it appears he was able to complete all the requirements of probation.  These experiences and the level of social and inter-personal interaction support the ALJ's conclusion.

In sum, the Plaintiff's argument is that the ALJ should have balanced the evidence differently and given Dr. Kivowitz's opinion more weight.  Dr. Kivowitz concluded Plaintiff met a listing for a limited period of time.  Looking at the record as a whole, the Plaintiff demonstrates mental capacity within normal limits and ability to function in day to day life.  Thus, there was a conflict in the record.  The ALJ is responsible for resolving conflicts in the record and that resolution must be upheld where, as here, it is supported by substantial evidence.

### C. The ALJ Properly Considered the Opinions of Dr. Bartell and Articulated Legally Sufficient Reasons to Discount the Opinion

Plaintiff met with Dr. G. Bartell, M.D., a staff psychiatrist, several times during a one-year period while he was on parole, from May 2007 through May 2008. AR 497-500, 541-62. In June 2007, one month after meeting Plaintiff, Dr. Bartell noted that Plaintiff's ability to work is limited by "panic episodes around people and his inability to interact in group settings like grocery stores." AR 556. In January 2008, after a few more months seeing Plaintiff, Dr. Bartell completed a mental functioning capacity questionnaire, demarking moderate limitations in eight different work-related activities, marked limitations in two different work-related activities, and serious limitations in six different work-related activities. AR 499.  During the 18 months Dr. Bartell regularly saw the Plaintiff between 2007-2008, his treatment records show consistent and less anxious behavior while taking low-dose medication. AR 542-562, 744. While in the care of Dr. Bartell, Plaintiff attended community college classes and regularly went to the gym. *Id*. Dr. Bartell consistently noted that Plaintiff was alert, pleasant, organized, cooperative, and "overall less depressed and anxious. AR 542-562, 744. Dr. Bartell offered no

objective evidence or clinical findings which would support the demarcations of marked or extreme limitations he noted in June 2007 on the medical residual functioning capacity questionnaire. AR 542-562, 744.

The ALJ's findings give "little weight" to the opinion of Dr. Bartell that Plaintiff's RFC.[9] AR 743. Here, there is evidence in the record of contradictory opinions among Plaintiff's treating, examining, and non-examining physicians regarding the severity of the limitations caused by Plaintiff's mental impairments. *See, e.g.,* AR 1078 ("I do not feel he is disabled physically or mentally any more and can do work.") In light of the contradictions, the Court will use the "specific, legitimate reasons" standard. *See Thomas*, 278 F.3d at 957.

The ALJ meets this standard by setting out four specific, legitimate reasons for giving little weight to the medical opinions of Dr. Bartell: (1) the opinion is "not supported by objective evidence and it is inconsistent with the record as a whole," (2) is not supported by the objective findings previously discussed, and (3) is inconsistent with Plaintiff's activities of daily living. AR 743.

## A. Not Supported by Objective Evidence and Inconsistent with the Record as a Whole

The ALJ considered and gave little weight to the opinion of Dr. Bartell, listing the reasons that the evidence is not supported by objective clinical or diagnostic findings to support the functional assessment and that it is inconsistent with the record as a whole. AR 746. The ALJ's reasons are appropriate because Dr. Bartell merely summarized Plaintiff's subjective complaints, diagnoses, and treatment but did not provide any objective clinical or diagnostic evidence to support the functioning questionnaire. AR 499-500, 743.

---

[9] Plaintiff again improperly characterizes the ALJ as rejecting Dr. Bartell's opinion, instead of giving it little weight.

"[W]hen confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). As to any inconsistencies between the opinions of the treating physicians, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). A physician's opinion is not binding upon the ALJ and may be discounted where another physician contradicts it. *Magallanes*, 881 F.2d at 751. The more consistent a medical opinion is with the record as a whole, the more weight it is given. *See* 20 C.F.R. § 404.1527(d)(4). A treating source's opinion on the nature and severity of an impairment is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. § 404.1527(d)(62). The "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Bartell points to no objective testing he performed. Plaintiff argues that the "clinical findings" Dr Bartell notes in the RFC questionnaire, "avoids social interaction, hypersensitive to people, wears dark sunglasses inside, much of the time isolated, is aloof and guarded, may have panic attacks" are adequate. But to the extent these notations are supported by Dr. Bartell's medical records, these are the summaries of Plaintiff's own self-reported complaints, which are contradicted by both Plaintiff's reported activities of daily living as well as Dr. Bartell's notes regarding improvement. AR 553 ("I've been doing all right … passing courses… likes school and to work out… stable with current medications."). That marked and extreme findings could be made without objective testing as part of the course of treatment renders Dr. Bartell's conclusions inconsistent

with the record as a whole, objective testing, and the course of treatment that would be expected.  *See, e.g.,* AR 565 (Dr. Ratner test results generally within normal range).

The only items cited by Plaintiff as clinical findings that are not self-reported are Dr. Bartell's observations that Plaintiff wore dark sunglasses inside and came across as aloof and guarded.  There can be no legitimate argument that "wears dark sunglasses inside" qualifies as a clinical finding, and this notation appears only once in the first two treatment notes, and is later contradicted by several of Dr. Bartell's notes that Plaintiff "makes good eye contact." *See* AR 558 (5/29/07 "makes good eye contact"), AR 557 (6/8/07 "sitting without dark glasses and makes better eye contact").  And while Dr. Bartell's impression may correctly be that Plaintiff is aloof and guarded, his treatment records equally as often refer to Plaintiff as "pleasant, alert, and cooperative."  Thus, there is a conflict in the record that the ALJ properly resolved, as well as substantial evidence that Dr. Bartell's opinion was inconsistent with his own notes, in addition to inconsistent with the record as a whole as outlined above.  *See* Section IV.B.3.

### B. Inconsistent with Objective Findings and Activities of Daily Living

The ALJ also points to Dr. Bartell's opinions of marked and extreme limitations as inconsistent with the objective findings previously discussed "which show claimant was functioning well, … had normal mental status exams, was taking and passing college courses, and was doing well on medication," as well Plaintiff's reported activities of daily living such as being part of a relationship and sometimes living with a girlfriend, cooking, cleaning, laundry.  These items were discussed above, and the analysis is incorporated by reference.  *See* Section IV.B.3-4.

In light of the entire record, and the ALJ's role in evaluating the credibility of inconsistent testimony, ALJ properly considered the opinion of Dr. Bartell, articulating legally sufficient reasons to discount the weight given to a treating physician.

### V.     CONCLUSION

The court finds that the ALJ's decision to deny Plaintiff benefits is supported by substantial evidence.  Accordingly, the court **recommends** that Plaintiff's motion for

summary judgment be **denied** and that Defendant's cross motion for summary judgment be **granted**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties on or before **August 21, 2019**. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before **August 30, 2019**. The parties are advised that any failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's order. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 6, 2019

Hon. Nita L. Stormes
United States Magistrate Judge